Commonwealth of Pennsylvania, Pennsylvania
Public Utility Commission *v.* Bates Taxi, Inc.,
Appellant.

Argued September 13, 1976, before President Judge BOWMAN and Judges MENCER and BLATT, sitting as a panel of three.

*James J. Rahner,* with him *Hickey, Azpell & Rahner,* for appellant.

*William T. Hawke,* Assistant Counsel, with him *Edward J. Morris,* Counsel, for appellee.

OPINION BY JUDGE BLATT, December 21, 1976:

Bates Taxi, Inc. (Bates) has appealed from an order of the Pennsylvania Public Utility Commission (PUC) imposing a $1,000 fine for certain violations of the Public Utility Law[1] (Law), requiring the company to cease conducting business in a manner violative of that Law, and requiring the company to maintain its books, records, and drivers' logs so that gross revenues are accurately reflected and reported.

After a hearing on the complaint, which had been instituted on its own motion, the PUC made findings that Bates had: (1) transferred the use, control and operation of its taxicabs to one or more of its drivers by oral rental-lease agreements; (2) permitted its taxicabs to be driven by independent contractors who were not "employees"; and (3) failed to keep its rec-

---

[1] Act of May 28, 1937, P.L. 1053, *as amended,* 66 P.S. §1101, et seq.

ords so that gross revenues were adequately reflected. On the basis of these findings, the PUC concluded that Bates had violated Section 202(e) of the Law, 66 P.S. §1122(e), which requires prior application to and approval by the PUC.

> (e) For any public utility . . . to acquire from, or to transfer to, any person or corporation, including a municipal corporation, *by any method or device whatsoever,* including a consolidation, merger, sale or lease, the title to, or the possession or use of, any tangible or intangible property used or useful in the public service. . . . (Emphasis added.)

Bates was also found to have violated Rule 15, Part IV, of the PUC Bus and Taxicab Regulations:[2]

> *Equipment, Ownership and Operation.* Every vehicle operated as a taxicab shall be owned by and registered in the name of the certificate holder. No such vehicle shall be operated except by the certificate holder or an employee of the certificate holder. Taxicab operation and service shall be under the direct control and supervision of the certificate holder.

The complaint against Bates had been initiated by the PUC after it learned of a "guaranteed revenue" option given by the company to its taxicab drivers as a salary alternative to a commission consisting of a pre-determined percentage of gross fares. Under this oral guaranteed revenue agreement, each driver paid Bates seventy-five dollars per week and retained all gross fares. In addition, each driver electing the guaranteed revenue option agreed to maintain his assigned cab, paying for repairs out of the gross fares, in return for an understanding that no other driver would be assigned to use the cab except when break-

---

[2] This regulation, with minor changes in wording, is now published at 52 Pa. Code §29.136.

4

downs or other emergencies occurred which required that Bates place the cab in service. All of the Bates' drivers were assigned to specific shifts and expected to operate within the territory covered by the PUC certificate which Bates held.

This Court's review of PUC orders is limited, of course, to a determination of whether or not substantial evidence supports the findings, determination, or order, an error of law has been committed, or constitutional rights have been violated. *Pennsylvania Public Utility Commission v. Blanchette*, 21 Pa. Commonwealth Ct. 329, 345 A.2d 787 (1975).

As to the first two findings here, Bates contends that the record lacks substantial evidence to support them. A review of the record indicates, however, that there was testimony by Mr. James F. Brogan, a former guaranteed revenue driver, that when he came to work for Bates he assigned the titles to two of his vehicles to Bates for no monetary consideration. The record also indicates testimony by Brogan that, while he was employed as a Bates driver, he arranged for a second driver to operate one of these two vehicles, and that this driver had no association with Bates. Brogan further testified that he paid $150 per week for the use of both cabs, kept all fares without reporting the total earnings to the company, paid for all maintenance of the two cabs, and withheld payroll taxes for himself and the other driver who was paid a commission. In addition, Brogan stated that he never submitted daily logs to Bates listing fares or destinations[3] and that, when he left Bates in November of 1974, one of these two cabs (the other having been junked) was reassigned to his new taxicab com-

---

[3] Rule 13, Part IV, of the PUC Bus and Taxicab Regulations, 52 Pa. Code §29.134, makes the submission of a daily log mandatory and requires that these logs be retained on file for at least one year.

pany employer for no consideration. Although the record also contains testimony that Brogan had been directed by Bates to submit a daily log of his activities and that such a log is now required of all drivers, there is clearly enough evidence of record to support the PUC's findings here in question, and it is the PUC, as the fact-finder, which had the task of weighing and resolving conflicts in the evidence. *Pennsylvania Public Utility Commission v. Pennsylvania Gas and Water Co.,* 19 Pa. Commonwealth Ct. 214, 341 A. 2d 239 (1975).

Bates does not dispute the third PUC finding concerning bookkeeping irregularities, and these problems have apparently since been corrected by the company. However, counsel for Bates also argues that its guaranteed revenue plan is a management method for improving the efficient operation of its company. It points out that there has been no offer of evidence which would suggest that service to the public has suffered, and, citing *Peoples Cab Co. v. Pennsylvania Public Utility Commission,* 185 Pa. Superior Ct. 628, 137 A.2d 873 (1958), Bates contends that the PUC cannot interfere unless it can show that service to the public has been adversely affected.

It is true that in *Peoples, supra,* and in *Peoples Cab Co. v. Pennsylvania Public Utility Commission,* 216 Pa. Superior Ct. 18, 260 A.2d 490 (1969), which upheld the PUC cancellation of the Peoples Cab Company certificate for continuing violative practices by using independent contractors to drive their cabs, the Superior Court endorsed a public utility's right to manage its own affairs so long as the public receives adequate service. These two cases, however, can be readily distinguished from the case at hand.

In the first of these *Peoples* decisions, the Court struck down that portion of the PUC's order prohibiting any agreement, arrangement, or understanding

whereby an operator would pay a sum of money to the certificate holder for the use of a taxicab, holding that such an order would interfere with the right of the company to manage its own affairs. In the case at hand, however, the PUC has not ruled that Bates' decision to utilize a guaranteed revenue plan violates the Law per se but has merely issued a limited order directing that, if such a system is adopted by the management, it must be operated within the parameters of the Law and the implementing regulations of the PUC. There can, of course, be no management right to operate in violation of the Law.

Moreover, in the two *Peoples* decisions, the PUC found that the company there had violated Section 401 of the Law, 66 P.S. §1171, which requires every certificate holder to provide "reasonably continuous" service. Bates, on the other hand, has been found to have violated Section 202(e) of the Law, which regulates the ownership and use of taxicabs. Even if service is reasonably continuous and adequate, the PUC is specifically empowered by Section 202(e) to regulate ownership and to enforce its regulation requiring taxicabs to be operated only by the certificate holder or its employees. In the case at hand, it is the company's transfer of use and operation of its taxicabs to individual drivers, together with its failure to maintain direct control over its taxicab service which have resulted in the PUC order that such practices, which violate the Law and regulations, must cease.

We believe that the evidence here supports the findings and conclusions made by the PUC. Moreover, the PUC order is sufficiently limited to a prohibition of practices which violate the express language of either the Law or of appropriate regulations. The PUC order is, therefore, affirmed.

ORDER

AND Now, this 21st day of December, 1976, the order of the Pennsylvania Public Utility Commission dated November 25, 1975 is affirmed.